1  Tomas A. Guterres, Esq. (State Bar No. 152729)
2  Catherine M. Mathers, Esq. (State Bar No. 221983)
   Clay W. Wilkinson, Esq. (State Bar No. 269080)
3  **COLLINS COLLINS MUIR + STEWART** LLP
4  **1100 El Centro Street**
   **South Pasadena, CA  91030**
5  **(626) 243-1100 – FAX (626) 243-1111**
6  Email: tguterres@ccmslaw.com
   Email: cmathers@ccmslaw.com
7  Email: cwilkinson@ccmslaw.com
8  Attorneys for Defendants, COUNTY OF LOS ANGELES; LOS ANGELES
9  COUNTY SHERIFF'S DEPARTMENT; and SHERIFF LEE BACA

10            **UNITED STATES DISTRICT COURT**
11            **CENTRAL DISTRICT OF CALIFORNIA**
12

13  REINA MARIBEL CAMPOS,            ) CASE NO. CV 11-09613 DDP (PJWx)
    INDIVIDUALLY, AND SUCCESSOR )   *[Assigned to the Hon. Dean D. Pregerson,*
14  IN INTEREST TO STEVE ULYSSES )   *Courtroom 3]*
15  CABRERA, BLANCA CARDENAS,  )
    INDIVIDUALLY, AND SUCCESSOR )   **COUNTY OF LOS ANGELES' REPLY**
16  IN INTEREST TO STEVE ULYSSES )   **REQUEST FOR JUDICIAL NOTICE;**
17  CABRERA,                        )   **DECLARATION OF CLAY**
                                    )   **WILKINSON**
18              Plaintiffs,         )   **[Fed. R. Evid. 201]**
19                                  )
                                    )
20      v.                          )
                                    )   **DATE:   August 13, 2012**
21  COUNTY OF LOS ANGELES; LOS )   **TIME:   10:00 a.m.**
22  ANGELES COUNTY SHERIFF'S     )   **COURTROOM:   3**
    DEPARTMENT; SHERIFF LEE      )
23  BACA; and DOES 1 through 10, )
24  inclusive,                     )   **Complaint Filed:   November 18, 2011**
                                    )
25  _____Defendants._    )   **Trial Date:  None**
26
27  ///
28  ///

Collins Collins
Muir + Stewart LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone (626) 243-1100
Fax   (626) 243-1111

18138 – REPLY REQ FOR JUDICIAL NTC

1

**COUNTY DEFENDANTS' REPLY REQUEST FOR JUDICIAL NOTICE**

1  TO THE HONORABLE COURT:

2      Defendants County of Los Angeles, County of Los Angeles Sheriff's

3  Department, and Sheriff Lee Baca hereby request that this Court take judicial notice

4  of the following document pursuant to Federal Rule of Evidence 201:

5      1.    The Third Amended Complaint from *Starr v. Baca*, Case No. CV 08-

6          00508 GW (SHx) attached hereto as Exhibit "1".

7

8  DATED:  July 30, 2012        COLLINS COLLINS MUIR + STEWART LLP

9

10  By: _____

11      Tomas A. Guterres
    Catherine M. Mathers

12      Clay W. Wilkinson

13      Attorneys for Defendants
    COUNTY OF LOS ANGELES;

14      LOS ANGELES COUNTY SHERIFF'S

15      DEPARTMENT; and
    SHERIFF LEE BACA

# DECLARATION OF CLAY WILKINSON

I, Clay Wilkinson, declare:

1.      I am an attorney admitted to practice before all courts of the State of California and the United States District Court for the Central District of California. I am an associate with Collins Collins Muir + Stewart LLP, counsel of record for Defendants County of Los Angeles, County of Los Angeles Sheriff's Department, and Sheriff Lee Baca (collectively referred to as "Defendants") in the above-captioned matter.  The following facts and circumstances are personally known to me.  If called upon to testify to them, I could and would do so.

2.      I make this declaration in support of Defendants' Reply Request for Judicial Notice.

3.      Attached hereto as Exhibit "1" is a true and correct copy of the Third Amended Complaint from *Starr v. Baca*, Case No. CV 08-00508 GW (SHx) that I obtained from Public Access to Court Electronic Records (PACER).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration was executed on July 30, 2012 at South Pasadena, California.

_____
Clay Wilkinson — Declarant

Collins Collins
Muir + Stewart LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone (626) 243-1100
Fax     (626) 243-1111

*18138 – REPLY REQ FOR JUDICIAL NTC*

3

COUNTY DEFENDANTS' REPLY REQUEST FOR JUDICIAL NOTICE

# EXHIBIT "1"



R. Samuel Paz (SBN: 62373)
**LAW OFFICES OF R. SAMUEL PAZ**
5701 W. Slauson Avenue, Suite 202
Culver City, California 90230
Telephone: 310.410.2981 Facsimile: 310.410.2957
Samuelpaz@msn.com

Sonia M. Mercado (SBN: 117069)
**SONIA MERCADO & ASSOCIATES**
5701 W. Slauson Avenue, Suite 202
Culver City, California 90230
Telephone: 310.410.2981 Facsimile: 310.410.2957
Soniamer2002@yahoo.com

Attorneys for Plaintiff,
Dion Starr.

**FILED**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DION STARR, | CASE NO. CV 08-00508 GW (SHx) |
| Plaintiff, | [Hon. George H. Wu] |
| v. | **THIRD AMENDED COMPLAINT FOR DAMAGES:** |
| COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, SHERIFF LEROY BACA, IN HIS INDIVIDUAL CAPACITY, DEPUTY MAYBET BUGARIN, DEPUTY JOSE GARIVAY, SGT. MICHAEL INGE, LT. ALFRED GONZALEZ, CAPT. JOHN CLARK, AND DOES 1 THROUGH 10, INCLUSIVE, | **1) Violation of Civil Rights Causing Injury;** |
| | **2) Policy, Custom or Practice Causing Constitutional Violation; and** |
| | **3) Failure to Train, Supervise, Causing Constitutional Violation.** |
| Defendants. | **[Plaintiff Demands Jury Trial]** |

## JURISDICTION

1.      The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.  Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983, and 1988.

1

**VENUE**

2. Venue over Plaintiff's claims are proper in the Central District of California because one or more of the Defendants' principal place of business is in the County of Los Angeles, and the events giving rise to the claim occurred in this district. 28 U.S.C. §1391(a)(1) and (b)(2).

3. Plaintiff DION STARR brings this action against the COUNTY OF LOS ANGELES, the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, SHERIFF LEE BACA, in his individual capacity, DEPUTY MAYBET BUGARIN, and Does 1 through 10, inclusive, and alleges as follows:

**PARTIES**

4. Plaintiff DION STARR currently resides in the City of Los Angeles, County of Los Angeles, State of California.

5. Defendant COUNTY OF LOS ANGELES (hereinafter referred to as "COUNTY"), is a chartered subdivision of the State of California with the capacity to sue and be sued. Defendant COUNTY is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies, including the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereinafter referred to as "LASD"), and its agents and employees. At all times relevant to the facts alleged herein. Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of the LASD and its employees and agents complied with the laws and the Constitution of the United States and of the State of California.

6. Defendant SHERIFF LEE BACA (hereinafter referred to as "BACA") is and was at all times mentioned herein, and on or about January 27, 2006, the Sheriff of Los Angeles County. He was charged by law and was responsible with the administration of defendant LASD and its employees, and for the

-2-

1  supervision, training and hiring of persons, agents and employees working
2  within said LASD, including officers, deputies, medical staff, mental health
3  staff and Does 1 through 10, inclusive. Sheriff BACA is sued in his personal
4  and individual capacity as a supervisory official for his own culpable action or
5  inaction in the training, supervision, or control of his subordinates, or for his
6  acquiescence in the constitutional deprivations which this Third Amended
7  Complaint alleges, or for conduct that showed a reckless or callous
8  indifference to the rights of others. BACA'S affirmative conduct involves his
9  failure to ensure enforcement of policies, rules, or directives that set in motion
10  a series of acts by others which he knew or reasonably should have known,
11  would cause others to inflict the constitutional injury.

12  7.  Defendants SGT. MICHAEL ING, LT. ALFRED GONZALEZ, CAPT. JOHN
13  CLARK, were at all times mentioned herein, and on or about January 27,
14  2006, line supervisors on duty at the Los Angeles County Jail, Men's Central
15  Jail. They were charged by law and were responsible with the administration
16  of the jail and its custodial facility, its deputies and line supervision, for
17  training and supervising its officers, deputies, and Does 1 through 10. They
18  are sued as the supervisory officials on duty at the time of this incident, and
19  their actions or inactions in the training, supervision, or control of their
20  subordinates, or for their acquiescence in the constitutional deprivations
21  which this Third Amended Complaint alleges, or for conduct that showed a
22  reckless or callous indifference to the rights of those for whom they were
23  charged with providing security and safety. These defendants failed to ensure
24  enforcement of policies, rules, or directives that set in motion a series of acts
25  by others which they knew or reasonably should have known, would cause
26  others to inflict the constitutional injury.

27  8.  Defendants DEPUTY MAYBET BEGARIN, DEPUTY JOSE GARIVAY,
28  and Does 1 through 10 were at all times mentioned herein, deputies, custodial

-3-

staff and were employees of COUNTY and LASD. They were charged by
law and were responsible with the supervision, care, security, and safety of
inmate DION STARR, and were responsible for ensuring that his
constitutional and statutory rights were not violated. It was the duty and
responsibility of these Defendants to supervise, monitor and protect inmates
under their supervision and control; to ensure inmates did not harm other
inmates; to maintain safety and security in the jail; to not use unnecessary
force on inmates; to protect inmates from excessive use of force by other
deputies; and, to report deputy wrongful conduct that results in the infliction
of unwarranted force or violence against an inmate.

9. Plaintiff is informed and believes and thereon alleges that Defendants sued
herein as Does 1 through 10, inclusive, were and are deputy officers, agents or
employees of Defendants COUNTY and LASD and were at all relevant times
acting in the course and scope of their employment and agency. Plaintiff
alleges that each of the Defendants named as a "DOE" was in some manner
responsible for the acts and omissions alleged herein. At this time, Plaintiff is
ignorant of the true names and capacities of the Doe defendants, and upon
discovery of same, Plaintiff will ask leave of this Court to amend this
Complaint to allege such facts, full names and responsibility when that
information is ascertained.

10. Defendants and Does 1 through 10, were at all times mentioned herein
COUNTY and LASD employees and supervisors. They were charged by law
and were responsible with the supervision of deputies and other employees
under their command in LASD, including the Men's Central jail and the Twin
Towers Medical Facilities, and for the supervision, training, reprimands and
corrective actions of persons, deputies, agents, medical staff, and employees
working under their chain of command within said LASD and COUNTY,
including officers, deputies, medical staff, and for investigating, accounting

-4-

1    and reporting their subordinates conduct to their superiors, and accountable
2    for and to Does 1 through 10, inclusive, as set forth herein and below.

**PRELIMINARY ALLEGATIONS**

4    11.   At all times relevant to the facts alleged herein, Defendants, including Does 1–
5          10 were duly appointed, qualified and acting officers, employees, medical
6          staff, and/or agents of COUNTY and LASD, employed as such by Defendants,
7          and acting within the course and scope of their employment and/or agency and
8          under color of state law. Each of the Defendants and Doe Defendants caused
9          and is responsible for the unlawful conduct and resulting by, inter alia,
10         personally participating in the conduct, or acting jointly and in concert with
11         others who did so by authorizing, acquiescing, condoning, acting, omitting or
12         failing to take action to prevent the unlawful conduct by promulgating or
13         failing to promulgate policies and procedures pursuant to which the unlawful
14         conduct occurred; by failing and refusing, with deliberate indifference to
15         Plaintiff's rights, to initiate and maintain adequate supervision, security,
16         training, compliance with responsibilities and duties, and staffing; by failing
17         to maintain proper and adequate policies, procedures and protocols; and by
18         ratifying and condoning the unlawful conduct performed by agents and
19         officers, deputies, medical staff and employees under their direction and
20         control.

21   12.   Whenever and wherever reference is made in this Complaint to any act by
22         Defendants and Doe Defendants, such allegations and references shall also be
23         deemed to mean the acts and failures to act of each Defendants individually,
24         jointly or severally.

25                              **FACTUAL ALLEGATIONS**

26   13.   Sometime prior to and on or about January 27, 2006, DION STARR, an
27         African American person, was in Defendants' custody, care, supervision,
28         control, and protection. While in his housing cell, Plaintiff saw a group of

-5-

1   Hispanic inmates who appeared to be members of a jail-prison gang gathering
2   at his cell door, threatening to inflict him with physical harm. Plaintiff began
3   to yell in a very loud voice to the defendant deputies to come to provide
4   security and to prevent the possibility that he may be subject to physical harm.

5   14.   Defendant, deputy JOSE GARIVAY, and Doe 1-10, knew, or should have
6   known, that DION STARR was at risk for being violently attacked and that he
7   had repeatedly yelled for help to prevent being attacked by the violent
8   Hispanic gang members. Said Defendants and Does 1-10, ignored DION
9   STARR's yells for help and ignored their duty to provide reasonable security
10  to protect him, and instead Doe 1-10 opened his cell gate allowing a group of
11  violent Hispanic prison-jail gang members to enter DION STARR'S cell and
12  repeatedly stab him and his African-American cell mate with a knife like
13  objects.

14  15.   Said Defendants and Does 1-10 continued to ignore DION STARR's ongoing
15  screams for help and for protection, while Hispanic prison-jail gang members
16  continued to stab Plaintiff approximately 23 times and stab his cell-mate many
17  times also, causing DION STARR to suffer pain and mental anguish, and to be
18  subjected to physical abuse by others, in violation of his Eighth Amendment
19  right to be free from unusual punishment.

20  16.   Defendants and Does 1-10 knew and/or had reason to know, that DION
21  STARR would be and/or was being assaulted by violent Hispanic gang
22  members, but they were deliberately indifferent to Plaintiff's security and
23  protection and failed to ensure his security, safety and to prevent inmate
24  violence and harm to him.

25  17.   Defendant deputy JOSE GARIVAY, and Doe 1-10 created or increased the
26  danger facing DION STARR at the time he was in his cell by ignoring his
27  cries for help and instead opening the cell gates and allowing violent Hispanic
28  gang members to enter Plaintiff's cell to attack him.

-6-

| | | |
|---|---|---|
| 1 | 18. | After DION STARR had been repeatedly stabbed, Deputy MAYBET |
| 2 | | BUGARIN, and Does 1-10 went to his cell. While DION STARR was laying |
| 3 | | on the floor seriously injured, bleeding and moaning in excruciating physical |
| 4 | | pain, Defendant MAYBET BUGARIN, a Hispanic deputy, yelled at him |
| 5 | | "nigger lay down," she told him to "shut up" and without any reason or |
| 6 | | justification, intentionally kicked Plaintiff's face, nose, and body numerous |
| 7 | | times, causing DION STARR further injury, pain and bleeding, causing a nose |
| 8 | | fracture, while continuing to yell at him "shut up nigger." |
| 9 | 19. | Other deputies Doe 1-10 watched and stood by as MAYBET BUGARIN |
| 10 | | called DION STARR racial epithets and kicked him, and failed to prevent |
| 11 | | further brutality and injury to his already seriously injured body. DION |
| 12 | | STARR had committed no act or used any words that would have provoked |
| 13 | | MAYBET BUGARIN and Does 1-10 to react with excessive force, brutality |
| 14 | | and racial and denigrating epithets, in violation of DION STARR'S |
| 15 | | constitutional rights. |
| 16 | 20. | Subsequent to January 27, 2006, after returning to the jail from County |
| 17 | | medical center, DION STARR, was scheduled to be seen for follow-up |
| 18 | | medical care, treatment and medication at the jail medical clinic. However, |
| 19 | | Defendant MAYBET BUGARIN was deliberately indifferent to Plaintiff's |
| 20 | | serious medical needs and she denied, delayed and intentionally interfered |
| 21 | | with his right to medical treatment and care for his injuries. |
| 22 | | **FIRST CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C.** |
| 23 | | **SECTION 1983 AGAINST INDIVIDUAL DEFENDANTS DEPUTIES** |
| 24 | | **JOSE GARIVAY AND MAYBET BUGARIN, AND DOES 1-10.** |
| 25 | 21. | Plaintiff refers to paragraphs 1 through 20 and incorporates them by reference |
| 26 | | herein as though fully set forth. |
| 27 | 22. | This action is brought under Title 42 U.S.C. § 1983, and on the Eighth |
| 28 | | Amendment of the United States Constitution and pursuant to the general laws |

-7-

of the State of California. Plaintiff alleges that the conduct of each of these
Defendants deprived DION STARR of his constitutional right and caused him
to suffer grievous harm and physical injuries while he was in the custody of
Defendants. As set forth above DION STARR was subjected to deprivation of
rights by Defendants and Doe Defendants 1-10, which rights include, but are
not limited to: privileges and immunities secured to Plaintiff by the
Constitution and laws of the United States. By reason of the aforementioned
acts, these individual Defendants and Does 1-10, have violated Plaintiff's
constitutional rights to reasonable security, to be free from excessive force,
and access to medical care and treatment which are protected under the Eighth
Amendment's prohibition against cruel and unusual punishment.

23. As a result of these individual Defendants and Doe 1-10 actions and/or
inactions, DION STARR was assaulted and stabbed, suffered severe pain and
physical trauma and injuries to his head, arms, legs, torso, back, abdomen,
and mental anguish, which injuries and damages are ongoing, and he has
incurred costs of hospital, medical, nursing, and care and treatment.

24. By virtue of the provisions of 42 U.S.C., Section 1988, Plaintiff is entitled to
an award of reasonable attorneys' fees and costs according to proof.

25. Each individual Defendant and Doe Defendants acted recklessly, with callous
indifference to DION STARR's constitutional rights and should be assessed
punitive damages.

**SECOND CAUSE OF ACTION AGAINST COUNTY AND LASD, FOR**
**CUSTOM, OR PRACTICE CAUSING CONSTITUTIONAL**
**VIOLATIONS.**

26. Plaintiff restates paragraphs 1 through 24, of this Complaint and incorporates
them herein by reference as though fully set forth herein.

27. At all times herein mentioned, Defendants COUNTY, LASD and Does 1 - 10,
and each of them, maintained customs or practices that posed a substantial risk

-8-

1      of serious harm to inmates in Plaintiff's situation and each defendant knew

2      that the following custom or practice posed this risk of harm: (1) improper

3      classification and housing of inmates; (2) inadequate supervision and training

4      of custody assistants and deputies to provide reasonable security to inmates;

5      (3) failure to provide reasonable security and/or prevent abuse of inmates by

6      other inmates; (4) failure to supervise, investigate and take corrective actions

7      in incidents of failure to provide reasonable security resulting in inmate-on

8      inmate violence; (5) condoning lax supervision of deputy misconduct,

9      unconstitutional conduct, and or dereliction of duty; (6) condoning lax

10     supervision by supervisors who fail to report or investigate deputies and other

11     supervisors wrongful, unconstitutional, or dereliction of duty and failure to

12     provide reasonable security to inmates; (7) condoning lax supervision by line

13     supervisors who fail to report or investigate deputies who use excessive force

14     on inmates; (8) ratifying wrongful conduct by deputies and/or supervisors that

15     results in serious injuries to inmates or deaths of inmates, civil litigation,

16     judgments and settlements by failing to implement corrective action to prevent

17     repetition of the wrongful conduct; (9) failure to implement competent and

18     appropriate policies and procedures regarding supervision of gates and control

19     of gates; (10) failure to enforce policies and procedures regarding the use and

20     designation of inmates as trustees; (11) failure to implement indicated policies

21     and procedures for designation of inmate workers as trustees; (12) failure

22     comply with policies and procedures regarding checking inmate identification.

23   28.   Plaintiff is informed and believes and thereon alleges that Defendants and

24     Does 1 -10, each had a history and propensity for acts of the nature

25     complained of herein and manifested such propensities prior to and during

26     their employment and/or agency with defendants COUNTY and LASD.

27     Plaintiff is further informed and believes and thereon alleges that these

28     Defendants and Does 1-10, knew, or in the exercise of reasonable care should

1    have known, of such prior history and propensity at the time such individuals
2    were hired and/or during the time of their employment.  These Defendants'
3    disregard of this knowledge and/or failure to adequately investigate and
4    discover and correct such facts caused the violation of Plaintiff's
5    constitutional rights.

6    29.    The above alleged customs or practices were a legal cause of Plaintiff's
7    injuries, and each individual Defendant and Doe 1-10 acting in accord with
8    these customs or practices acted with deliberate indifference to the needs of
9    persons such as DION STARK, who was in the custody, control and care
10   Defendants.

11   **THIRD CAUSE OF ACTION AGAINST DEFENDANT BACA IN HIS**
12   **INDIVIDUAL CAPACITY, LT. ALFRED GONZALEZ , SGT.**
13   **MICHAEL INGE, CAPT. JOHN CLARK, AND DOES 1-10, FOR**
14   **FAILURE TO TRAIN AND SUPERVISE CAUSING**
15   **CONSTITUTIONAL VIOLATIONS**

16   30.    Plaintiff restates and reiterates Paragraphs 1 through 29 of this Third
17   Amended Complaint and incorporates them here by reference as though fully
18   set forth herein.

19   31.    LT. GONZALEZ, SGT. INGE, and CAPT. CLARK are sued in their capacity
20   as supervisor officers and line officers on duty at the time of this incident, and
21   for their ongoing duties and responsibilities as supervisors responsible for the
22   safety and security of inmates in the Men's Central Jail.  SGT. INGE was the
23   on supervisor responsible for the 2000 floor, LT. GONZALEZ was the watch
24   commander for the jail, and Capt. CLARK was the facility commander.

25   32.    Sheriff BACA is sued in his individual capacity.  BACA knew or reasonable
26   could have known, of his subordinates' ongoing constitutional violations as
27   (set forth more fully in paragraph 27 above and paragraph 35 below), of the
28   failure to provide reasonable security at the jail, failure to prevent inmate on

-10-

1     inmate violence, failure to monitor inmates, lax or no supervision by his
2     subordinate supervisors, use of excessive force on inmates, failure to
3     investigate incidents of involving inmate on inmate violence, failure to
4     protect, failure to implement indicated policies and procedures regarding,
5     including but not limited to the use of inmates as trustees,  BACA failed to act
6     to prevent his subordinates ongoing unconstitutional conduct (Taylor v. List,
7     880 F.2d 1040 (1040 (9ᵗʰ Cir. 1989), he acquiesced, condoned or ratified a
8     custom, practice or policy of ongoing misconduct by his subordinate deputies
9     and supervisors.

10   33.   BACA is sued in his individual capacity for his "own culpable action or
11     inaction in the training, supervisor, or control of his subordinates, including
12     the facility commanders, the watch commander, the floor sergeants," and/or
13     for his "acquiescence in the constitutional deprivations as alleged herein,
14     and/or conduct that showed a reckless or callous indifference to the rights of
15     [inmates such as Plaintiff], by his actions or inaction in implementation or lack
16     thereof of policies, procedures, rules or directives.  BACA's actions and/or
17     inactions "set in motion a series of acts by others (as provided below, but not
18     limited to), which he knew or reasonably should have known, would cause
19     others to inflict the constitutional violations alleged herein. (Larez v. City of
20     Los Angeles, 946 F.2d 630 (9ᵗʰ Cir. 1991).

21   34.   Plaintiff is informed and believes and thereon alleges that prior to the incident
22     alleged herein, on or before 1997, and subsequent hereto, BACA and
23     supervisor Defendants knew or reasonably should have known, that sheriff
24     deputies, custody personnel and supervisors, employed by COUNTY and
25     LASD, in the course and scope of their employment under color of law,
26     committed similar acts of failure to provide reasonable security, failure to
27     monitor inmates under their watch, abandonment of their post, ignoring
28     inmate-on-inmate violence, improper designation of inmate workers, deputy

1  battery and assault of inmates; failure to report deputy battery and assault on
2  inmates; failure to investigate deputy misconduct and violation of inmates'
3  constitutional rights; which wrongful conduct resulted in inmate-on-inmate
4  injuries and deaths and ongoing use of excessive force on inmates; and
5  delayed or denied inmates' access to medical care.

6  35.  Sheriff BACA and supervisor Defendants became aware, or should have
7  become aware, and should have taken corrective actions to prevent repeated
8  incidents of supervisors failing to supervise subordinates who were derelict in
9  their duties and responsibilities and deliberately indifferent as set forth in
10  paragraph 27 above and to: (1) the necessity to provide reasonable security to
11  protect inmates from inmate-on-inmate violence; (2) incidents of deputies
12  using excessive force on inmates; (3) incidents of deputies delaying or
13  denying medical and mental health care to inmates; (4) incidents of deputies
14  and supervisors adhering to a "code of silence" resulting in failures to report
15  deputies' wrongful and unconstitutional conduct; (5) incidents of failing to
16  conduct investigations or conducting shoddy investigations of incidents; (6)
17  ratifying wrongful conduct by deputies and supervisors that result in serious
18  injuries to inmates or deaths of inmates, civil litigation, judgments and
19  settlements by failing to implement corrective action to prevent repetition of
20  ongoing wrongful conduct; (7) incidents of lax or lack of supervision and
21  training; (8) incidents that supervisors were not reporting to their superiors as
22  necessary or required of their duties and responsibilities.

23  36.  Some of the incidents and notice to BACA and supervisor Defendants, of
24  unconstitutional wrongful conduct caused by a failure to provide reasonable
25  security as required by *Farmer v. Brennen*, are set forth as follows: Beginning
26  in June 1996, when the U.S. Department of Justice ("DOJ") began
27  investigations of conditions at Los Angeles County Jails: On September 5,
28  1997, it gave BACA, then a supervisor, clear written notice in a "findings

-12-

letter" of a continued and serious pattern and practices of constitutional
violations including, abuse of inmates by sheriff's deputies working in the jail
and inmate on inmate violence. BACA was a supervisor and hen a member of
the Sheriff's Executive Council and he reviewed the DOJ's findings and thus
was on notice of the continued serious pattern, practice or custom of
constitutional violations in the LASD and its jail.

37. As a result, BACA is liable in his personal capacity based upon his personal
knowledge or constructive knowledge of approving settlements and claims,
being the recipient of weekly reports from his subordinates responsible for
reporting deaths and injuries in the jails, receiving the ongoing reports of his
Special Counsel and Office of Independent Review which state in written
form to the Sheriff Baca, knowledge that there is a custom of deputies being
careless, deliberately indifferent to the constitutional rights of inmates in the
county jail which has become well settled and widespread that Sheriff Baca,
the policymaking officials of the municipality can be said to have either actual
or constructive knowledge of it yet did nothing to end the practice of
Deputies' failure to provide reasonable security resulting in the injury or death
of inmates. BACA's inaction to investigate, re-train, reprimand or request
disciplinary action of the involved deputies is acquiescence in the
unconstitutional conduct and constitutes a custom and practice and is the
moving force of Plaintiff's injuries, for which the Sheriff, BACA, is liable,
under the authority of *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th
Cir. 1991)( Chief of Police held individually liable for condoning excessive
force); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) ("Policy or
custom may be inferred if, after [constitutional violations] . . . officials took
no steps to reprimand or discharge the [prison] guards, or if they otherwise
failed to admit the guards' conduct was in error."); *Grandstaff v. City of
Borger*, 767 F.2d 161 (5th Cir. 1985) (upholding verdict for police chief's

1    failure to respond to the situation or to make changes in order to prevent

2    recurring violations evidenced preexisting policy of deliberate indifference to

3    the dangerous recklessness of its police officers), *Bordanaro v. McLeod*, 871

4    F.2d 1151 (1st Cir. 1989) and, *Henry v. County of Shasta*, 132 F.3d 512, 520

5    (9th Cir. 1997) (Defendant Sheriff's failure to fire or reprimand officers

6    evidences a policy of deliberate indifference to their misconduct even after

7    being sued to correct a blatantly unconstitutional course of treatment - "is even

8    more persuasive evidence of deliberate indifference or of a policy encouraging

9    such official misconduct." BACA delegated to subordinates and/or to the

10    Office of Independent Review his non-delegated statutory duties and

11    responsibilities as the policy maker and his non-delegated duty to supervise

12    and hold his subordinates accountable, and failed to take corrective measures

13    to ensure that his subordinates were complying with their duties and

14    responsibilities to prevent ongoing constitutional violations.

15  38.    In 1999, under threat of a lawsuit by the DOJ, BACA and the COUNTY

16    submitted to a Memorandum of Understanding ("MOU") with the DOJ which

17    required BACA and the COUNTY to address and correct the continuous

18    constitutional violations to which inmates were being subjected, particularly

19    inmates suffering from mental problems. BACA personally signed the MOU.

20    However, after years of monitoring the County Jail system, under the authority

21    of the MOU, in 2006, the DOJ experts issued a report which still found

22    noncompliance with many of its recommendations regarding the abuse of

23    inmates and the deficiencies which continue at county jails which constitute a

24    pattern and practice of constitutional violations. BACA received the

25    monitoring reports and was responsible for the institution of policies and

26    procedures to correct the unconstitutional conditions, but failed to do so.

27    Plaintiff incorporates by reference paragraph 37 above as though fully set

28    forth here;

39. On July 6, 2002, Ramon Gavira was severely beaten by a female deputy and later, according to forensic evidence, was killed in his cell at county jail. Deputies and staff testified that they were not investigated nor disciplined for lapses in supervision of Mr. Gavira and allegations that Mr. Gavira had been physically abused by deputies. BACA was personally advised of the failure to investigate and no discipline being imposed although witnesses to the beatings of Gavira told homicide investigators of the deputy misconduct. Plaintiff incorporates by reference paragraph 37 above as though fully set forth here.

40. On March 23, 2003, BACA was made again made aware of Hispanic inmate gangs attacking African Americans and the failure to provide reasonable security when the COUNTY and LASD approved a settlement in a civil action where Ahmad Burrell, Rory Fontanelle, and Aaron Cunningham were attacked over a three day period, sustaining serious injuries. Although the deputies had known that Hispanic gangs were going to attack African Americans, nonetheless by the third day of the attacks, the deputies failed to provide reasonable security and Burrell was attacked in the housing dormitory and the attackers were able to stab him twenty-four (24) times, some causing serious and permanent injury to his abdomen and head. He suffered permanent brain damage. Plaintiff incorporates by reference paragraph 37 above as though fully set forth here.

41. On October 21, 2003, inmate Ki Hong was killed by three inmates who entered the dayroom where Hong was housed. Inmate Hong was stabbed, beaten and strangled to death approximately 1½ hours after he arrived at his housing in Men's Central Jail. Inmates Lee and Cho allegedly killed him while inmate Chung acted as lookout and while the other 57 inmates housed in the dayroom undoubtedly looked on. Notice of numerous violations showing deputies failing to provide reasonable security and abandoning duties, their lax discipline and failure to supervise were given to BACA by his in-house

lawyers, yet the inmate on inmate violence continued. This was the first of
five inmate-on-inmate killings that occurred in the jail system over a six-
month period. Plaintiff incorporates by reference paragraph 37 above as
though fully set forth here.

42. On December 6, 2003, Inmate Prendergast was beaten periodically over
several hours from about 6:00 p.m., to early next morning by inmates Newell
and Perman, two of his three cellmates. Newell and Perman had been drinking
"pruno," an alcoholic brew made in the cell, before they attacked Prendergast
because he, according to them, exhibited strange behavior and talked to
himself. Again, notice of numerous violations showing deputy failing to
provide reasonable security to the entire cell block, lax discipline and failure
to supervise were presented to BACA, yet the inmate on inmate violence
continued. Plaintiff incorporates by reference paragraph 37 above as though
fully set forth here.

43. On December 9, 2003, inmate Mario Alvarado, aka Victor Cortez, was killed
in a holding cell while awaiting transfer to the Pitchess Detention Center. A
short time after he arrived at the holding cell, which contained 40 inmates, he
was attacked by one or more other inmates, who punched and kicked him until
he lost consciousness and continued to beat him afterward. Deputies
responsible for providing reasonable security failed to perform to do so, and
the inmates who beat Alvarado had so much time they were concealed his
dead body under clothes and trash behind a three-foot privacy wall in a toilet
area. Deputies responsible for accounting for Alvarado called out his name
from the list, but when he did not respond, they assumed he had never been
placed in the cell. Approximately seven hours after his assault, a worker
inmate cleaning the cell discovered his body and notified deputies. Again,
notice of numerous violations showing deputy failing to provide reasonable
security to the holding cell, lax discipline and failure to supervise were

-16-

1    presented to BACA, yet his response, if any, was not apparent and the inmate
2    on inmate violence continued. Plaintiff incorporates by reference paragraph
3    37 above as though fully set forth here;

4    44.    On December 13, 2003, Jose Beas was a pre-trial detainee, having been
5           arrested on December 3, 2003, by deputies for an accusation of child
6           molestation. It was later discovered that the investigating deputy had falsified
7           the contents of a tape recorded statement of Jose Beas in the arrest report,
8           claiming that Beas had admitted to inappropriate touching of a minor when the
9           tape recording did not contains such a statement. After being classified as an
10          inmate that was to be kept away from all general population inmates, and
11          being given a wrist band that identified him as such, he was taken to county
12          jail and placed in a holding tank with many general population inmates. Beas
13          was immediately beaten by the other inmates and suffered brain damage.
14          BACA was named as a defendant in that civil case and knew of the allegations
15          of failure to provide reasonable security to the holding cell, lax discipline and
16          failure to supervise and approved the settlement, yet, his response, if any, was
17          not apparent and the inmate on inmate violence continued. Plaintiff
18          incorporates by reference paragraph 37 above as though fully set forth here.

19   45.    On January 12, 2004, inmate Kristopher Faye was stabbed to death by several
20          inmates with jail-made knives on the lower tier of his module after he lowered
21          himself down from the upper tier balcony and attempted to use the phones.
22          Fay was African American and the attackers were Hispanic. Deputies
23          responsible for keeping the cell gates in the housing module close allowed all
24          the cell gates in the module to remain open which increased the danger of
25          violence and was in violation of LASD policy. The failure to provide
26          reasonable security resulted in fighting between the two racial groups, which
27          resulted in racial disturbance. Numerous violations showing errors in
28          classification, placing highly dangerous inmates with histories of violence

with nonviolent inmates presenting low security risk, deputy failing to provide reasonable security to the holding cell, lax discipline and failure to supervise were again presented to BACA in official reports, yet his response, if any, was not apparent and the inmate on inmate violence continued. Plaintiff incorporates by reference paragraph 37 above as though fully set forth here.

46. On April 20, 2004, inmate Raul Tinajero was killed in his cell in the jail, by inmate Santiago Pineda. Pineda had a history of prior misconduct in the jail but deputies failed to follow procedures and write disciplinary reports of this misconduct. Pineda had also previously escaped from the jail and was wrongly classified when he killed Tinajero. Tinajero was to be a witness in a criminal case against Pineda. Pineda was able to improperly leave his cell unnoticed by deputies who were responsible for monitoring his cell, walk across the jail unnoticed to find Tinajero's cell. Due to the monitoring failures of the deputies and inadequate procedures with regard to the escorting of inmates, Pineda was able to enter Tinajero's cell unchallenged by the deputies responsible for providing reasonable security, kill Tinajero undetected, remain in Tinajero's cell for five hours undetected by deputies. Numerous violations showing errors in classification, deputies failing to provide reasonable security to the housing cells, lax discipline and failure to supervise were again presented to BACA in official reports, yet his response, if any, was not apparent and the inmate on inmate violence continued. Plaintiff incorporates by reference paragraph 37 above as though fully set forth here.

47. On May 24, 23, 2004, Antonio Fernandez, was housed in a dormitory with four other inmates. He was accused by his cell mates of taking an item of personal property. The deputy that was assigned to monitor the dormitory had abandoned her duties and left her post unattended, and the post was vacant for approximately 20 minutes during which time the assault occurred. The beating lasted a significant amount of time and the assailants were able to take

Fernandez's body to the rear of the dormitory and conceal him. Despite the error in abandoning her post by the deputy and the failure to provide reasonable security to housing area, lax discipline and failure to supervise were again presented to BACA, yet his response, if any, was not apparent and the inmate on inmate violence continued. Plaintiff incorporates by reference paragraph 37 above as though fully set forth here.

48. BACA received notice from The Special Counsel to the Los Angeles County Sheriff's Department, in the 17th Semiannual Report (February 2004) and the 18th Semiannual Report (August 2004) of increasing levels of inmate violence in the jails. The report pointed out that although there was a system that reviewed incidents of inmate disturbances and riots with the purpose that its causes could be identified and that any implications for changes in policy, tactics, or training could be analyzed to improve security in the future, and that some of the recommendations may have prevented much more serious incidents from occurring, that BACA'S system in place for managing this information does not provide for its systematic, division-wide dissemination. Plaintiff incorporates by reference paragraph 37 above as though fully set forth here.

49. In February 2005 BACA received notice from The Special Counsel to the Los Angeles County Sheriff's Department, in the 19th Semiannual Report that his deputies conduct was ending up costing county tax payers millions of dollars annually in payments of civil judgments and settlements, in cases where the internal investigations had found no wrong doing. In all, BACA was notified by his Special Counsel that a review of twenty-nine (29) cases involving police misconduct and settled for $100,000 or more over the past five years, only eight resulted in any type of discipline to the involved officers or policy change in the Department. Thus, BACA was again aware of the systematic deficiencies in supervision and lax discipline, but has failed to made policy changes knowing the risk of harm created by allowing misconduct to go

1    unaddressed.  Plaintiff incorporates by reference paragraph 37 above as
2    though fully set forth here.

3    50.  On February 3, 2005, the finding of inmate abuse was again publically
4    presented to BACA by Special Counsel Merrick Bobb, in a report to the
5    Board of Supervisors finding that "Los Angeles County's largest jail is so
6    outdated, understaffed and riddled with security flaws that it jeopardizes the
7    lives of guards and inmates."  The Special Counsel's report criticized the
8    County Jail in downtown Los Angeles for "failing to prevent dangerous
9    inmates from being housed with lower-risk inmates. . . ."  The report concluded
10   that Mens' Central Jail "is nightmarish to manage" and suffers from "lax
11   supervision and a long-standing jail culture that has shortchanged
12   accountability for inmate safety and security."  Plaintiff incorporates by
13   reference paragraph 37 above as though fully set forth here.

14   51.  In August of 2005, BACA received notice from The Special Counsel to the
15   Los Angeles County Sheriff's Department, in the 20th Semiannual Report that
16   his management of the custody facilities was resulting in deputies having very
17   low morale and bitterness due to stagnation in jail assignments for an average
18   of five to seven years.  The Report pointed to a substantial number of deputies
19   in custody assignments leaving LASD for positions with other police agencies
20   (sixty-five in five months) resulting in insufficient staffing and forcing
21   overtime replacements.  The Report advised BACA that any longer than two
22   years in a custody assignment is not good for the deputies, the inmates, the
23   LASD or the public as deputies eager to get to a patrol assignment may
24   become bitter, jaded and complacent.   BACA is aware of the risk of harm
25   created by these policies and yet there has been no change apparent
26   notwithstanding his counsel's recommendations.  Plaintiff incorporates by
27   reference paragraph 37 above as though fully set forth here

28   52.  On October 24, 2005, Chadwick Shane Cochran, was booked into county jail
     for a nonviolent misdemeanor.  His mental health screening revealed a history

-20-

of mental illness controlled by psychiatric drugs that was confirmed by the Los Angeles County Mental Health Clinic, and he was classified be housed in a mental health facility located within the jail with suicide and assault precautions for his safety. Due to errors by staff his protective housing was terminated and he was sent to general population on November 16, 2005, where he was beaten to death a few hours later that day. Deputies compounded the error of removing Cochran from protective status and left a red color identification card which led the attacking inmates to believe that he was a "snitch" or informant. The deputies responsible for the safety of inmates abandoned their post and supervision of the locked day room in which 40 other inmates, some of whom were classified as violent "high risk" accused murderers and gang members, and known violent offenders. Cochran was screaming and many other inmates were yelling for them to stop, but no deputy resumed their responsibility to provide reasonable security until the inmates had grown tired of beating Cochran and hid his body under clothing and food trays. The numerous errors in classification, deputies failing to provide reasonable security to the day room housing cells, lax discipline and failure to supervise were again presented to BACA in official reports, yet his response, if any, was not apparent and the inmate on inmate violence continued. Plaintiff incorporates by reference paragraph 37 above as though fully set forth here.

53. The Office of Independent Review, who participate in jail investigations and review LASD investigations, Public Oversight Report 1st Quarter 2007, continue to give notice to BACA of deputies abandoning their posts, failing to properly classify, failing to monitor, falling asleep, not following procedures, failing to conduct timely security checks, deputies left inmates unsupervised, including deputy use of excessive force, and deputies encouraging inmate on inmate fights. Plaintiff incorporates by reference paragraph 37 above as though fully set forth here.

1  54.  BACA is sued in his personal and individual capacity as a supervisory official
2  for his own culpable action or inaction in the training, supervision, or control
3  of his subordinates, or for his acquiescence in the constitutional deprivations
4  which this First Amended Complaint alleges, or for conduct that showed a
5  reckless or callous indifference to the rights of others. BACA'S affirmative
6  conduct presented in this claim involves his failure to ensure enforcement of
7  policies, rules, or directives that set in motion a series of acts by others which
8  he knew or reasonably should have known, would cause others to inflict the
9  constitutional injury to Plaintiff.

10  55.  Supervisors LT. GONZALEZ, SGT. INGE, and CAPT. CLARK knew, or in
11  the exercise of reasonable care should have known, of the above prior history
12  and propensity at the time of this incident for similar acts of inmate on inmate
13  violence, incidents of killings as above stated, most of which occurred in their
14  facility, and that sheriff deputies and their supervisors had prior to the
15  commission of the acts complained of herein, acting under the color of their
16  authority as deputies in the course and scope of their employment as such,
17  committed similar acts of failure to supervise subordinates, failure to provide
18  reasonable security, lax or lack of security, abandonment of their post,
19  allowing violent inmates access to other inmates, deputy assistants were not
20  properly trained or supervised, lax or lack of supervision in designation of
21  inmate workers, deliberate indifference to the necessity to protect inmates,
22  failure to report deputy wrongful conduct, to prevent unreasonable use of
23  force, to report incidents of inmate on inmate violence, to provide access to
24  medical care to inmates, lax or lack of supervision by the supervisor sergeants,
25  watch commander and facility commanders.  Plaintiff incorporates by
26  reference paragraphs 31 to 54 above.

27  56.  Plaintiff is further informed and believes and thereon alleges that these line
28  supervisors knew, or in the exercise of reasonable care, should have known of
     this custom, policy, pattern or practice of unconstitutional violations, or in the

1   existence of facts which creates the potential of unconstitutional acts; and
2   these Defendants, had a duty to investigate their subordinates, and to instruct
3   their subordinates to prevent similar acts to other persons, but failed to take
4   steps to properly train, supervise, investigate or instruct deputies, jailers, and
5   as a result Plaintiff was harmed in the manner alleged herein by the line
6   supervisors' failure to train, supervise, investigate, instruct and take corrective
7   measures.   Plaintiff incorporates by reference paragraphs 31 to 54 above.
8   57.   As a result all supervisor Defendants and BACA's actions and/or inactions
9   and/or policies are themselves a repudiation of constitutional rights and are
10  the "moving force of the Constitutional violations, and the above policies,
11  practices and customs were in force on or about January 27, 2006, and was the
12  moving force of Deputy JOSE GARIVAY, MAYBET BUGARIN and Does 1-
13  10 unconstitutional conduct and with deliberate indifference to Plaintiff's
14  security allowed persons with predispositions to use force and intimidation on
15  African-American inmate, failed to provide security or protect him, and
16  Plaintiff and his African-American cell mate were brutally beaten and Plaintiff
17  was stabbed 23 times over a period of time by other inmates and/or persons
18  while the deputies and officers responsible for Plaintiff and his cell mate's
19  security, care and protection, abandoned their duties.
20  58.   As a result DION STARR was harmed in the manner threatened by the failure
21  to train, supervise, investigate or instruct subordinates in the manner herein
22  stated.
23  59.   As legal cause of the conduct of these Defendant supervisors actions or
24  inactions, as described above, Plaintiff was damaged and injured as alleged
25  above, as set forth above.
26  **WHEREFORE,** Plaintiff prays for relief as follows:
27  1.   For general damages according to proof;
28  2.   For past, present and future special damages according to proof;
    3.   For other losses in an amount according to proof.

-23-

R. Samuel Paz SBN 62373
LAW OFFICES OF R. SAMUEL PAZ
5701 W. Slauson Avenue, Suite 202
Culver City, California 90230

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| DION STARR, | CASE NUMBER: |
| | CV08-00508 GW (SWx) |
| PLAINTIFF(S), | |
| v. | |
| COUNTY OF LOS ANGELES, (SEE | |
| ATTACHMENT A FOR ADDITIONAL NAMED | |
| DEFENDANTS) | |
| DEFENDANT(S). | AMENDED SUMMONS |

TO: THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney
R. Samuel Paz                                    , whose address is:

5701 W. Slauson Avenue, Suite 202, Los Angeles,
California 90230

an answer to the ☐ complaint ☒ ____ THIRD amended complaint ☐ counterclaim ☐ cross-claim
which is herewith served upon you within   20   days after service of this Summons upon you, exclusive
of the day of service. If you fail to do so, judgement by default will be taken against you for the relief
demanded in the complaint.

Clerk, U.S. District Court

Dated: ____ -1 DEC 2008 ____                    By: ____ MARILYN DAVIS ____
                                                Deputy Clerk

CV-01A (01/01)                    SUMMONS

UNITED STATE DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Case Name: DION STARR v. COUNTY OF LOS ANGELES
Case No. CV 18-09508 GW (SKx)

THIRD AMENDED SUMMONS,
Attachment A, Additional Defendants (names)

LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, SHERIFF LEROY BACA, IN HIS INDIVIDUAL CAPACITY, DEPUTY MAYBET BUGARIN, DEPUTY JOSE GARIVAY, SGT. MICHAEL INGLE, LT. ALFRED GONZALEZ, CAPT. JOHN CLARK, AND DOES 1 THROUGH 10, INCLUSIVE.

R. Samuel Paz SBN 62373
LAW OFFICES OF R. SAMUEL PAZ
5701 W. Slauson Avenue, Suite 202
Culver City, California 90230

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| DION STARR | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | CV08-00508 GW (SHx) |
| v. | |
| COUNTY OF LOS ANGELES, ( SEE ATTACHMENT A FOR ADDITIONAL NAMED DEFENDANTS) | SUMMONS |
| DEFENDANT(S) | |

TO:     THE ABOVE NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney
R. Samuel Paz                                        , whose address is:

5701 W. Slauson Avenue, Suite 202, Los Angeles,
California 90230

an answer to the ☐ complaint ☒   THIRD   amended complaint ☐ counterclaim ☐ cross-claim
which is herewith served upon you within __20__ days after service of this Summons upon you, exclusive
of the day of service. If you fail to do so, judgement by default will be taken against you for the relief
demanded in the complaint.

Clerk, U.S. District Court

Dated: __E1 DEC 2008__            By: __MARILYN DAVIS__
                                         Deputy Clerk
                                         (Seal of the Court)

UNITED STATE DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Case Name: DION STARR v. COUNTY OF LOS ANGELES
Case No. CV 08-00508 GW (Shx)

THIRD AMENDED SUMMONS,
Attachment A: Additional Defendants names;

LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, SHERIFF LEROY
BACA, IN HIS INDIVIDUAL CAPACITY, DEPUTY MAYBET BUGARIN,
DEPUTY JOSE GARIVAY, SGT. MICHAEL INGE, LT. ALFRED GONZALEZ,
CAPT. JOHN CLARK, AND DOES 1 THROUGH 10, INCLUSIVE,