1

2

3                                                              O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  REINA MARIBEL CAMPOS,          )  Case No. CV 11-09613 DDP (PJWx)
    individually and successor    )
12  in interest to STEVE ULYSSES   )
    CABRERA,                       )  **ORDER GRANTING DEFENDANTS' MOTION**
13                                 )  **TO DISMISS AND STRIKE, IN PART**
                      Plaintiff,   )
14                                 )
          v.                       )
15                                 )
    COUNTY OF LOS ANGLES; LOS      )
16  ANGELES COUNTY SHERIFF'S       )  [Dkt. No. 20]
    DEPARTMENT; SHERIFF LEE        )
17  BACA,                          )
                                   )
18                    Defendants.  )
    _____  )
19

20        Presently before the court is Defendants County of Los

21  Angeles, County of Los Angeles Sheriff's Department, and Sheriff

22  Lee Baca's Motion to Dismiss and to Strike Plaintiff's Second

23  Amended Complaint.  Having considered the submissions of the

24  parties, the court grants the motion, in part, denies the motion,

25  in part, and adopts the following order.

26  **I.    Background**

27        Steve Cabrera ("Decedent") entered Men's Central Jail on

28  October 2007.  (SAC ¶ 41.)  On January 30, 2008, Decedent attempted

to commit suicide, and was diagnosed with a mental condition. (Id.)  Decedent was a former gang member, and at some point was placed in protective custody apart from active gang members.  (SAC ¶ 42.)  Nevertheless, jail staff transferred Decedent out of protective custody and onto a floor with active gang members.  (SAC ¶ 43.)  Decedent was afraid he would be killed by other inmates, and requested to be transferred back to protective housing.  (SAC ¶ 44.)  Decedent's requests were denied.  (SAC ¶ 45.)

On August 28, 2010, Decedent reported that someone had cut him on the head with a razor.  (SAC ¶ 46.)  Jail staff provided medical treatment for the cut. (Id.)  Roughly one week later, Decedent suffered another razor wound, this time to the arm.  (FAC ¶ 47.)  Decedent first reported that someone else had cut him, then later reported that he had cut himself.  (Id.)  Decedent was then transferred to administrative segregation, where he was housed in isolation.  (Id.)  Decedent was not placed in mental health treatment housing or placed on suicide watch.  (SAC ¶ 48.)  Approximately one month later, Decedent committed suicide in jail. (SAC ¶ 49.)

Plaintiff Campos, Decedent's mother, and Plaintiff Cardenas, Decedent's wife, filed the instant suit in their individual capacities and as Decedent's successors in interest.  Plaintiffs' Second Amended Complaint alleges three causes of action under 42 U.S.C. § 1983, one cause of action for general negligence, and three causes of action under state law.  Defendants the County, Sheriff's Department, and Sheriff Baca now move to dismiss certain causes of action and to strike portions of the SAC.

///

## II.  Legal Standard

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 129 S. Ct. at 1949.  Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 1950. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 1949 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 1950. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is a "context-specific" task, "requiring the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

3

1    Under Federal Rule of Civil Procedure 12(f), a court may

2  strike from a pleading any "redundant, immaterial, impertinent, or

3  scandalous matter."   Fed.R.Civ.P. 12(f).

4  **III. Discussion**

5    As an initial matter, several of the arguments raised in

6  Defendants' Motion to Dismiss or Strike are either unopposed by

7  Plaintiffs or abandoned in Defendants' reply.   First, Plaintiffs

8  concede that under California Government Code § 844.6(a)(2), the

9  County and Sheriff's Department are immune from Plaintiff's Sixth

10  Cause of Action for negligence.   Accordingly, those claims are

11  DISMISSED.   Second, Defendants initially argued that Defendant Baca

12  is immune from all three of Plaintiffs' state causes of action

13  under California Government Code § 820.2.   (Mot. at 14.).

14  Plaintiffs responded that Section 820.2 applies only to

15  discretionary policy decisions, and that the acts and omissions

16  alleged do not qualify as such.   (Opp. at 18-20.)   Defendants'

17  reply does not respond to Plaintiffs' argument.   The court

18  therefore deems Defendants' arguments with respect to state law

19  immunity abandoned.

20    A.   Standing

21    Defendants argue that Plaintiffs do not have standing to bring

22  the Second and Third Causes of action for violations of 42 U.S.C. §

23  1983 as Decedent's successors in interest.   (Mot. at 4, 5-6).[1]

24  Specifically, Defendants argue that neither Plaintiff has shown

25  that she qualifies as Decedent's personal representative under the

26

27    [1] Defendants do not challenge Plaintiffs' standing to bring
28  the First Cause of Action for Wrongful Death in their individual
   capacities.

California Probate Code, and that Plaintiff Campos cannot be
Decedent's successor in interest because his cause of action was
community property, which passed to his wife, Plaintiff Cardenas,
alone.  (Reply at 2-4.)  Apparently conceding that they are not
personal representatives, Plaintiffs appear to argue that they are
both Decedent's successors in interest.  (Opp. at 3.)

A decedent's Section 1983 claim survives the decedent's death
if the claim accrued before death and state law authorizes a
survival action.  Tatum v. City and County of San Francisco, 441
F.3d 1090, 1093 n.2 (9th Cir. 1996).  California Code of Civil
Procedure Section 377.30 authorizes survival actions brought by a
decedent's personal representative or, where there is no such
representative, decedent's successor in interest.  A successor in
interest is the beneficiary of decedent's estate or other successor
in interest who succeeds to a cause of action.  Cal. Code. Civ. P.
377.11.  Where a decedent dies intestate, as here, a surviving
spouse takes the decedent's share of community property.  Cal.
Prob. Code § 6401(a).  Separate property is distributed to the
surviving spouse and specified family members.  Cal. Prob. Code. §
6401; Cotton v. City of Eureka, Cal., No C 08-04386 SBA, 2010 WL
5154945 at *22 (N.D. Cal. December 14, 2010).

The only way both Plaintiff Campos and Plaintiff Cardenas can
be successors in interest is if Decedent's cause of action was
separate property.  The FAC is silent as to the status of
Decedent's marriage at the time of his death.  For reasons unknown
to the court, Plaintiffs' opposition is also silent on the issue,
and nowhere states that Decedent and Plaintiff Cardenas were
separated at the time Decedent's cause of action accrued.  At oral

1 argument, however, Plaintiffs' counsel represented for the first
2 time that Plaintiff Cardenas and Decedent were separated at the
3 time of Decedent's death, and, therefore, the cause of action was
4 Decedent's separate property.  Given the uncertainty regarding the
5 state of Decedent's marriage at the time of his death, the issue of
6 Plaintiff Campos' standing is more appropriately addressed on
7 summary judgment.

8    B.   Monell Claims

9    The parties agree that the County and Sheriff's Department may
10 not be held liable for Decedent's constitutional injuries on a
11 theory of respondeat superior.  Rather, under Monell v. Dept. of
12 Soc. Servs. Of City of New York, 436 U.S. 658 (1976), Plaintiffs
13 must show that Decedent's constitutional injuries resulted from an
14 official policy.  See Monell, 436 U.S. at 694; See also Edgerly v.
15 City and County of San Francisco, 599 F.3d 946, 960 (9th Cir. 2010)
16 ("[L]iablity attaches . . . where the entity's policies evince a
17 deliberate indifference to the constitutional right and are the
18 moving force behind the constitutional violation." (citation and
19 internal quotations omitted)).

20    Defendants' arguments with respect to the sufficiency of
21 Plaintiffs' Monell allegations overlap to a great degree with the
22 arguments regarding the Motion to Strike, discussed below.  (Mot.
23 at 9:9-13.)  Defendants conclusorily assert that the SAC's
24 allegations, some of which Defendants argue are extraneous, are
25 insufficient to state a Monell claim against the County or
26 Sheriff's Department.  (Mot. at 9-10.)  The court disagrees.
27 Paragraph 61 and its sub-parts include allegations that the County
28 and Sheriff's Department do not train deputies to identify inmates'

1   mental health needs, assign untrained or otherwise unqualified
2   deputies to supervise detainees with special needs, and fail to
3   provide sufficient mental health housing units.  (SAC ¶¶ 61(a)-(d),
4   (f)-(h).)  The SAC further alleges that, as a result of these
5   policies, Decedent was inappropriately housed and denied necessary
6   medical treatment, and ultimately committed suicide.  (SAC ¶¶
7   61(f)-(g), 62.)  To the extent Defendants challenge the sufficiency
8   of Plaintiffs' Monell allegations, the Motion to Dismiss is denied.
9           C.  Claims Against Sheriff Baca
10          Defendants also argue that all claims against Sheriff Baca
11   should be dismissed because the SAC does not allege that he
12   personally participated in Decedent's confinement or treatment.
13   (Mot. at 11.)  A supervisor may be individually liable if he is
14   personally involved in a constitutional injury or where there is a
15   "sufficient causal connection between the supervisor's wrongful
16   conduct and the constitutional violation."  Starr v. Baca, 652 F.3d
17   1202, 1207-08 (9th Cir. 2011) (quotation marks and citation
18   omitted).  Knowing refusal to terminate the acts of subordinates,
19   inaction in training or control of subordinates, acquiescence in
20   constitutional violations, or reckless or callous indifference to
21   constitutional rights may constitute sufficient causal connection
22   to a violation to confer individual liability upon a supervisor.
23   Id.

24          In Starr, the Ninth Circuit found supervisory liability
25   allegations against Sheriff Baca sufficient where the plaintiff's
26   complaint alleged several incidents of deputy-on-inmate violence
27   and inmate-on-inmate violence in Los Angeles County jails, that
28   Sheriff Baca received notice of the incidents, and that Sheriff

1    Baca acquiesced in the unconstitutional actions of his
2    subordinates.  Id. At 1216.  Here, Defendants argue that Starr does
3    not apply because this case about suicide, not the deputy-on-inmate
4    violence and inmate-on-inmate violence alleged in Starr.  The court
5    is not persuaded.  First, the SAC here does allege inmate-on-inmate
6    violence.  The SAC alleges that Decedent feared he would be killed
7    by fellow inmates and requested a transfer to protective housing.
8    (SAC ¶¶ 43-44.)  The SAC further alleges that Decedent reported at
9    least one, and possibly two, violent assaults against him by other
10   inmates. (SAC ¶¶ 46-47.)

11       Second, and more importantly, even putting aside inmate
12   violence issues, the SAC makes numerous allegations regarding
13   instances of inadequate mental health treatment within the jails
14   (e.g. ¶¶ 26, 30, 39), as well as allegations regarding Sheriff
15   Baca's knowledge of mental health-related incidents and issues
16   (e.g. ¶¶ 15-17, 19-20, 28-29).  Contrary to Defendants' argument,
17   the question is not whether the allegations here are identical to
18   those in Starr, but rather whether the SAC sufficiently alleges a
19   causal connection between Sheriff Baca's conduct and Decedent's
20   constitutional injuries.[2]  The court is satisfied that it does, and
21   that the individual claims against Sheriff Baca are adequately
22   pled.

23       D.  Motion to Strike

24       Defendants argue that this case about suicide and mental
25   health treatment, and that other allegations in the SAC,

26   _____

27       [2] Defendants' arguments appear to be motivated less by the
28   particulars of the SAC than by Defendants' position that "[t]he
     dissenting opinion in Starr has the better of the argument" as to
     what constitutes an adequate pleading.  (Reply at 6.)

1   specifically those regarding inmate-on-inmate violence and deputy-

2   on-inmate violence, should be stricken as immaterial under Federal

3   Rule of Procedure 12(f).  As explained above, however, allegations

4   regarding inmate-on-inmate violence are not irrelevant to this

5   matter.  Decedent reported at least one, and possibly two, armed

6   attacks by other inmates.  The SAC explicitly alleges that

7   Defendants' failure to protect Decedent from attack exacerbated

8   Decedent's mental health issues and increased the risk that he

9   would commit suicide.  (SAC ¶ 45.)  The court, therefore, declines

10  to strike inmate-on-inmate allegations from the SAC.

11      Some of the allegations identified by Defendants, however,

12  focus solely on instances of deputy-on-inmate violence in the

13  jails.  The court agrees with Defendants that these allegations are

14  not relevant to this matter.  Accordingly, all allegations

15  regarding deputy-on-inmate violence alone are stricken from the

16  SAC.[3]

17  **IV.  Conclusion**

18      For the reasons stated above, Defendants' Motion is GRANTED in

19  part and DENIED in part.  Plaintiffs' Sixth Cause of Action for

20  negligence against the County and Sheriff's Department is

21  DISMISSED.  Plaintiff's allegations involving only deputy-on-inmate

22  violence are STRICKEN from the Second Amended Complaint.

23  IT IS SO ORDERED.

24  Dated: August 23, 2012

                                    DEAN D. PREGERSON
25                                  United States District Judge

26  _____

27      [3] Though paragraph 30 of the SAC describes a deputy-on-inmate
    assault, that assault is alleged to have been motivated by the
28  inmate's mental health condition.  Paragraph 30, therefore, is not
    immaterial.